**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oliver Michael Pryor, | No. CV-12-00526-TUC- BGM |
| Petitioner, | **AMENDED ORDER** |
| | **(Amended as to first line only)** |
| v. | |
| Charles L. Ryan, *et al.*, | |
| Respondents. | |

Currently pending before the Court is Petitioner Oliver Michael Pryor's *pro se* First Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("First Amended Petition") (Doc. 11). Respondents have filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 17). Petitioner filed a Reply (Doc. 21). The First Amended Petition is ripe for adjudication.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Arizona Court of Appeals stated the facts[1] as follows:

---

[1] As these state court findings are entitled to a presumption of correctness and Petitioner

The victims, M. and K., were the granddaughters of Pryor's wife, Gail. Gail often watched the girls for her daughter Michelle while Michelle worked. Gail also worked, and at times, Pryor took care of the girls when both Gail and Michelle were working. During the summer of 2004, when school was not in session, the girls would spend a few days each week at Pryor and Gail's home, sleeping there some of the nights. Once school started in August, the girls would spend the night with Pryor and Gail if Michelle was on call at work and they could not stay with their father. Michelle testified that at one point during the summer, the girls no longer wanted to go to Gail's home. Over Pryor's objection, Michelle testified that in February 2006, the children had told her Pryor had touched them without their clothes on. The girls had told two of their cousins what had happened, and the cousins urged the girls to tell their mother. Michelle called the Pima County Sheriff's office, and Tucson Police Department Detective Katherine Kragnes subsequently responded. The girls were interviewed by a person qualified to conduct a forensic interview of children.

K. testified she had been eight or nine years old when the detective had interviewed her. She stated her grandpa more than once had put his mouth on her vagina. A drawing she had provided police was admitted as an exhibit; she explained the drawing depicted M. and Pryor in bed and showed his penis, which she explained had some "[l]ittle hairs." She also admitted telling the detective Pryor had "rubb[ed]" her "butt" with his hand. She recalled telling the detective about one incident in which Pryor had kissed her and her sister "in the wrong places" and about how she had seen "white stuff c[o]me out" of his penis. She admitted telling the prosecutor and defense counsel during an interview that "white stuff . . . went in [her] mouth sometimes." She also testified she and her sister had seen a videotape at Pryor's house that showed a man putting his mouth on and rubbing a girl's private parts and a woman putting her mouth on a man's private parts.

M. testified about a number of incidents during which Pryor had touched her on her "chest, . . . bottom, . . . [and] private area." She described how Pryor squeezed her breasts under her clothes and how, on many occasions, he had gone into the room where she and her sister K. were sleeping and told her to lick his penis. He also made her "[p]ut [her]

---

has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007); *Wainwright v. Witt*, 469, U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

mouth around it." She and K. licked his penis and "white stuff" came out. He also twice touched her inside her private parts with his hand. She described a game in which she and K. would take turns to see who could make him "happy fastest," which she said meant ejaculate. Pryor once paid K. $20 for making him happy fastest.

Michelle's husband Jeff, the children's stepfather, confronted Pryor at Gail's house after the children told Michelle what had been happening. Pryor denied molesting them. Detective Kragnes confronted Pryor and asked him if he would talk to her. She met with him and took a statement from him, which she recorded.

Answer (Doc. 17), Ariz. Ct. of Appeals Mem. Decision (Exh. "G") at ¶¶ 2–5 (alterations in original).

Petitioner was charged with two counts of continuous sexual abuse of a child, dangerous crimes against children, and two counts of furnishing obscene or harmful items to minors. *Id.*, Exh. "G" at ¶ 1. On September 15, 2008, a jury found Petitioner guilty of all counts. *Id.*, Ariz. Superior Ct., Pima County, Minute Entry 9/15/2008 (Exh. "A") at 1–2. On October 23, 2008, Petitioner was sentenced to the presumptive term of twenty (20) years imprisonment for each count of continuous sexual abuse of a child, to run consecutively. *Id.*, Ariz. Superior Ct., Pima County, Order 10/23/2008 (Exh. "B") at 2–3. Petitioner was also sentenced to the presumptive term of 2.5 years for each count of furnishing harmful items to a minor, to run concurrently with each other, but consecutively from the second twenty (20) year term. *Id.*, Exh. "B" at 3–4.

### A. Direct Appeal

On October 23, 2008, Petitioner filed his Notice of Appeal. Answer (Doc. 17), Notice of Appeal 10/23/2008 (Exh. "C"). On April 7, 2009, Petitioner filed his Opening Brief. *Id.*, Appellant's Opening Br. 4/7/2009 (Exh. "D"). Petitioner alleged three (3)

claims for relief, including that (1) the trial court "abused its discretion in denying the motion *in limine* to preclude evidence of Appellant's arrest in Mexico[,] [and] giving a flight instruction unsupported by the facts[;]" (2) the trial court "erred in denying [Appellant's] Rule 20 motion challenging that the state had not proved continuous sexual abuse per statute in counts one and two[;]" and (3) the trial court erred in "admit[ting] the testimony of Michelle Wright regarding what the girls told her, it being inadmissible hearsay and not within any proper exception[.]" *Id.*, Exh. "D" at 25–39.

On October 21, 2009, the Arizona Court of Appeals affirmed Petitioner's convictions. *See* Answer (Doc. 17), Ariz. Ct. App. Mem. Decision 10/21/2009 (Exh. "G"). In assessing Petitioner's claim regarding the trial court's admission of evidence regarding Petitioner's move to Mexico prior to being charged, the court of appeals recognized that "[t]he mere fact that Pryor had an explanation for why he left the country did not render the evidence irrelevant." *Id.*, Exh. "G" at 7. Relying on Arizona state case law and procedural rules, the court of appeals determined that the "alternative explanation for flight goes to weight not admissibility of evidence and does not preclude instruction." *Id.* (citing *State v. Hunter*, 136 Ariz. 45, 49, 664 P.2d 195, 199 (Ariz. 1983)). Again relying on state case law, the court of appeals further found that the evidence was not unduly prejudicial. Answer (Doc. 17), Exh. "G" at 8. As such, the court of appeals found that the trial court did not abuse its discretion. *Id.*, Exh. "G" at 7–8.

The Arizona Court of Appeals also rejected Petitioner's contention "that the trial court erred when it instructed the jury it could infer guilt from evidence of flight." *Id.*,

Exh. "G" at 8.   The court of appeals noted that although Petitioner objected to the evidence of flight, he did not expressly object to the instruction.   *Id.*, Exh. "G" at 9.   As such, Petitioner's only ground for relief in the appellate court was one for fundamental error.   *Id.* (citing *State v. Dann*, 220 Ariz. 351, ¶ 51, 207 P.3d 604, 617 (Ariz. 2009)).   Again relying on state law, the court of appeals went on to hold that in light of the evidence, the jury had been properly instructed, and even if the instruction were fundamental error, Petitioner had not met his burden of establishing prejudice.   *Id.*, Exh. "G" at 9–10.

Regarding Petitioner's Rule 20 motion, the Arizona Court of Appeals recognized that "[a] Rule 20 motion should only be granted if there is no substantial evidence to support the conviction."   Answer (Doc. 17), Exh. "G" at 10 (citing Ariz. R. Crim. P. 20(a).   The court defined "substantial evidence" as "more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'"   *Id.*, Exh. "G" at 10–11 (quoting *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (Ariz. 1990)).   Upon review of the evidence presented at trial, the court of appeals held that "reasonable jurors readily could find beyond a reasonable doubt that Pryor had engaged in at least three sexual acts with the victims for a period of three months or longer[,]" and as such the trial court did not abuse its discretion in denying Petitioner's Rule 20 motion.   *Id.*, Exh. "G" at 11–12.

Concerning Petitioner's contention that "the trial court erred in admitting the statements the victims had made to their mother over his [hearsay] objection[,]" the court

of appeals held that "[t]o the extent the testimony . . . was presented for the truth of the matter asserted it was cumulative."  Answer (Doc. 17), Exh. "G" at 12–13.  The court further held that "[a]ny error in its admission was therefore harmless beyond a reasonable doubt."  *Id.*, Exh. "G" at 13 (citing *State v. Dickens*, 187 Ariz. 1, 19, 926 P.2d 468, 486 (Ariz. 1996); *State v. Eastlack*, 180 Ariz. 243, 256–57, 883 P.2d 999, 1012–13 (Ariz. 1994)).

Petitioner did not seek review of this decision with the Arizona Supreme Court. Answer (Doc. 17), Ariz. Ct. App. Mandate 12/2/2009 (Exh. "H"); Petition (Doc. 1) at 3.

### B.  Initial Post-Conviction Relief Proceeding

On February 3, 2010, Petitioner filed his Notice of Post-Conviction Relief ("PCR").  Answer (Doc. 17), Not. of PCR 2/3/2010 (Exh. "I").  On September 10, 2010, Petitioner filed his Petition for Post Conviction Relief.  Answer (Doc. 17), Pet. for PCR (Exh. "L").  Petitioner claimed that his trial counsel was ineffective for "failing to challenge the prosecutor's use of peremptory strikes based on gender."  *Id.*, Exh. "L" at 5. In furtherance of this argument, Petitioner alleged that trial counsel's failure to challenge the prosecution's peremptory challenges "fell below prevailing norms" and that Petitioner was prejudiced by the "structural error" resulting from the alleged deprivation of having an impartial jury decide his case.  *Id.*, Exh. "L" at 9.

On November 3, 2010, the trial court denied Petitioner's PCR petition.  *See* Answer (Doc. 17), Exh. "O."  The trial court recognized that "[t]o state a colorable claim for ineffective assistance of counsel claim, a petitioner must satisfy a two-part test: (1) a petitioner must show that his or her counsel's performance fell below an objective

standard of reasonableness; and (2) a petitioner must show that the deficient performance resulted in actual prejudice to his case." *Id.*, Exh. "O" at 1–2 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  The Rule 32 court found that it need not decide whether trial counsel was ineffective for failing to make a *Batson* challenge, because the Petitioner had "failed to allege sufficient facts to establish that his case was in fact prejudiced."  Answer (Doc. 17), Exh. "O" at 2.  The Rule 32 court noted that "a defendant is not constitutionally entitled to [a] balanced jury, nor a jury comprised of the same proportions of genders as exist in the community generally." *Id.*, Exh. "O" at 2 (citing *State v. Williams*, 111 Ariz. 175, 178, (Ariz. 1976)).  The Rule 32 court further noted that "[a]n examination of the jury roster . . . reveal[ed] that of the fifty-four jurors questioned in voir dire, only nineteen were men[,] [and] [o]f these, eleven were struck for cause." *Id.*, Exh. "O" at 2.  The Rule 32 court held that "nothing about this factual scenario indicates that the prosecutor intentionally used her strikes to remove men from the panel[,] . . . [and] Petitioner has offered no evidence that his conviction was, in fact, the result of gender bias." *Id.*, Exh. "O" at 2.  As such, the Rule 32 court determined that "Petitioner ha[d] failed to show that he was actually prejudiced in this case, and thus ha[d] failed to satisfy the second prong of the *Strickland* test[,]" and denied relief *Id.*, Exh. "O" at 2.

On December 27, 2010, Petitioner filed his Petition for Review from Denial of Rule 32 Petitioner for Post-Conviction Relief in the Arizona Court of Appeals.  *See* Answer (Doc. 17), Pet. for Review from Denial of Rule 32 Pet. For PCR 12/27/2010 (Exh. "Q").  On April 7, 2011, the Arizona Court of Appeals granted review, but denied

relief.  Answer (Doc. 17), Ariz. Ct. App. Mem. Decision 4/7/2011 (Exh. "R").  The court of appeals considered Petitioner's claims of ineffective assistance of counsel due to an alleged failure "to raise a claim based on *Batson v. Kentucky*, 476 U.S. 79 (1986), that the state had improperly used its peremptory strikes to remove several male jurors."  *Id.*, Exh. "R" at 2.  The court of appeals found that "[e]ven assuming . . . that Pryor ha[d] demonstrated his counsel should have raised a *Batson* challenge, that alone is not sufficient to show prejudice."  *Id.*, Exh. "R" at 3.  The court of appeals stated that Petitioner must also "show a reasonable probability a *Batson* challenge would have resulted in a different jury[.]"  *Id.*, Exh. "R" at 3 (quoting *Strickland*, 466 U.S. at 694).  The court of appeals held Petitioner failed to make "a colorable showing of such a probability."  *Id.*, Exh. "R" at 3.

On April 11, 2011, Petitioner filed a Motion for Reconsideration, which was summarily denied eight (8) days later.  *See* Answer (Doc. 17), Pet.'s Mot. for Recon. (Exh. "S") & Ariz. Ct. of Appeals Order 4/19/2011 (Exh. "T").  On April 21, 2011, Petitioner sought review of the denial of his PCR petition by the Arizona Supreme Court.  *See* Answer (Doc. 17), Pet. for Review to Ariz. Supreme Ct. 4/19/2011 (Exh. "U").  On September 27, 2011, the Arizona Supreme Court denied review without comment.  Answer (Doc. 17), Ariz. Supreme Ct. ME 9/27/2011 (Exh. "V").

### C.  Second Post-Conviction Relief Proceeding

On October 27, 2011, Petitioner filed his Notice of Post-Conviction Relief.  *See* Answer (Doc. 17), Not. of PCR 10/27/2011 (Exh. "W").  Petitioner argues that "[b]ecause Arizona law prohibits raising ineffective assistance of counsel claims within a

direct appeal, to deprive Pryor of effective counsel in a Post-Conviction Proceeding . . . [violates] Article 2 § 24 of the Arizona Constitution and the Sixth Amendment of the United States Constitution."   Answer (Doc. 17), Def.'s (Subsequent) Petition for PCR 10/27/2011 (Exh. "X") at 5.  Petitioner further argued that "[b]oth Appellate [c]ounsel and Post-Conviction counsel were ineffective for failing to previously present th[e] issue [of Petitioner's competency] to the [c]ourt for consideration."  *Id.*, Exh. "X" at 5. Petitioner argues that his sleep deprivation due to sleep apnea was such that a competency hearing was required to assess whether he could "knowingly and intelligently" reject a plea, stand trial.  *Id.*, Exh. "X" at 5–8.  Petitioner further asserts that this failure violated his Due Process rights.  *Id.*, Exh. "X" at 8.

On May 17, 2012, the trial court denied Petitioner second PCR petition.  *See* Answer (Doc. 17), In Chambers Ruling, Re: Pet. for PCR 5/17/2012 (Exh. "AA").  The trial court analyzed whether Petitioner's claim regarding his alleged incompetency because he was not permitted to use his Continuous Positive Air Pressure ("CPAP") machine while incarcerated at the Pima County Jail could be raised under Rule 32.2, Arizona Rules of Criminal Procedure.  *Id.*, Exh. "AA" at 2.  The trial court observed that "Petitioner's claim that he was not competent does not fall under any of the exceptions listed in Rule 32.2(b)[,] . . . [and] could have been raised on direct appeal[.]"  *Id.*, Exh. "AA" at 2.  The trial court further noted that although Petitioner outlined this claim to the court of appeals, it was not properly presented for review.  *Id.*, Exh. "AA" at 2–3.  The trial court found that "Petitioner's failure to fully raise the issue on direct appeal constitutes a waiver, and Rule 32.2(a) precludes Petitioner from raising the issue in this

subsequent Petitioner for Post Conviction Relief." *Id.*, Exh. "AA" at 3.

In analyzing Petitioner's claim regarding allegedly ineffective assistance of appellate counsel, the trial court again looked to the state procedural rules.  Answer (Doc. 17), Exh. "AA" at 3.  The trial court found that "Petitioner's argument . . . [did] not fall under any of the exceptions listed in Rule 32.2(b)[, Arizona Rules of Criminal Procedure] . . . [and] Petitioner could have argued that he received ineffective assistance of appellate counsel in his first Petition for Post Conviction Relief."  *Id.*, Exh. "AA" at 3.  As such, the trial court deemed Petitioner's claim regarding ineffective assistance of appellate counsel waived, and precluded from review.  *Id.*, Exh. "AA" at 3.

Concerning Petitioner's allegation that he received ineffective assistance of PCR counsel due to the latter's failure to argue ineffective assistance of appellate counsel, the trial court held that this claim was without merit.  *Id.*, Exh. "AA" at 3.  Relying on Arizona state law, the court recognized that "non-pleading defendants have no right to effective PCR counsel."  *Id.*, Exh. "AA" at 3.

On May 30, 2012, Petitioner filed a Motion for Rehearing of the Court's May 16th [sic], 2012 Order, which was denied without comment on June 7, 2012.  Answer (Doc. 17), Mot. for Rehr'g of the Court's May 16th [sic], 2012 Order (Exh. "BB") & Ariz. Superior Ct. Order 6/7/2012 (Exh. "CC").  Subsequently, on June 27, 2012, Petitioner filed a *pro se* Petition for Review.  Answer (Doc. 17), Pet. For Review (Exh. "DD").  Relying on *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), Petitioner argued that the trial court erred (1) by holding that the "Petitioner was not entitled to effective assistance of counsel in his first Rule 32 Petition[;]" and (2) "by failing to address the issues of competency

when it relied on State case law for 'preclusion[.]'" Answer (Doc. 17), Exh. "DD" at 4. Petitioner further asserted that "under new federal law, Arizona defendants, who go to trial, are now constitutionally guaranteed the 6th Amendment right to effective counsel in a collateral proceeding, attacking the ineffectiveness of all previous counsel." *Id.*, Exh. "DD" at 5. Additionally, Petitioner framed the issue of competency as whether he "was coherent and competent enough to weight those very benefits and consequences [of a plea agreement], and make a knowing and intelligent refusal of that plea agreement." *Id.*, Exh. "DD" at 7. Petitioner asserts that his sleep deprivation made him incompetent, and that the trial courts denial of a competency hearing deprived him of his right to a fair trial, as did his prior counsel's failure to raise the issue for review. *Id.*, Exh. "DD" at 8–9.

On October 12, 2012, the Arizona Court of Appeals granted review, but denied relief. *See* Answer (Doc. 17) Ariz. Ct. App. Mem. Decision 10/12/2012 (Exh. "EE"). As an initial matter, the court of appeals corrected Petitioner's misapprehension of the Supreme Court of the United States' decision in *Martinez*, recognizing that "the Court did not ground its decision in a constitutional right, instead determining that defendants had an 'equitable' right to the effective assistance of initial post-conviction counsel and limited [this] decision to the application of procedural default in federal habeas review." *Id.*, Exh. "EE" at 3 (citing *Martinez v. Ryan*, — U.S. —, 132 S.Ct. at 1319–20). The court of appeals held that nothing in *Martinez* altered Arizona law that "a claim that Rule 32 counsel was ineffective is not a cognizable ground for relief in a subsequent Rule 32 proceeding." *Id.*, Exh. "EE" at 3–4. As such, the Arizona Court of Appeals denied relief. *Id.*, Exh. "EE" at 4.

Petitioner did not seek review with the Arizona Supreme Court.  First Amended Petition (Doc. 11) at 5.

### D. The Instant Habeas Proceeding

On December 11, 2012, Petitioner filed his First Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 11).  Petitioner claims five (5) grounds for relief.  First, Petitioner alleges the trial court erred by denying his "motion *in limine* to preclude evidence of his arrest in Mexico and giving a flight instruction unsupported by the facts creating prejudice outweighing any probative value to the State," thereby denying Petitioner a fair trial in violation of the Due Process Clause and the Fifth, Sixth, and Fourteenth Amendments.  First Amended Petition (Doc. 11) at 6.  Second, Petitioner alleges that the trial court erred in denying his "Rule 20 Motion," in which he argued that the "State failed to prove all the necessary elements required to find the Defendant guilty of continuous sexual abuse in counts one and two[.]"  *Id.* at 7.  Petitioner further alleges that "[t]here [was] no testimony to tell when the 90 day period started or ended[,] . . . [and] without the required testimony, it is impossible to convict the Defendant 'beyond a reasonable doubt[.]'"  *Id.* Third, Petitioner claims that the trial court erred when it admitted "the testimony of Michelle Wright (complainant's [sic] mother) regarding what [M. and K.] (complainants) told her, being it was inadmissible hearsay and not within any proper exception."  *Id.* at 8. Petitioner asserts that this violated his rights under the Confrontation Clause of the Sixth Amendment.  *Id.*  Fourth, Petitioner asserts that "trial counsel render[ed] ineffective assistance of counsel by failing to challenge the Prosecutor's use of peremptory strikes

against jurors, based on gender[.]"  First Amended Petition (Doc. 11) at 9.  Fifth, Petitioner alleges ineffective assistance of counsel based upon "appellate and first Rule 32 counsels' failure to challenge defendant's conviction based on defendant's competency, due to sleep deprivation[.]"  *Id.* at 10.  On April 1, 2013, Respondents filed their Answer (Doc. 17), and on May 8, 2013, Petitioner filed his Reply (Doc. 21).

## II.     STANDARD OF REVIEW

### A.  *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*."  28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  Correcting errors of state law is not the province of federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).  Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945, 127 S.Ct.

2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).  Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] which demands that state-court decisions be given the benefit of the doubt."  *Pinholster*, 131 S.Ct. at 1398 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013).   Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"  *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)).  Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect.  *Id.*, 550 U.S. at 473, 127 S.Ct. at 1939; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013).  Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result.  *See Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error . . .

beyond any possibility for fairminded disagreement.'"   *Burt*, 134 S.Ct. at 10 (quoting

*Harrington*, 562 U.S. at 103, 131 S.Ct. at 786–87) (alterations in original).

### B. Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must

exhaust all of the remedies available in the State courts.  28 U.S.C. § 2254(b)(1)(A).  This

"provides a simple and clear instruction to potential litigants: before you bring any claims

to federal court, be sure that you first have taken each one to state court."   *Rose v. Lundy*,

455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).   As such, the

exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."   *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct.

1347, 1349, 158 L.Ed. 2d 64 (2004) (internal quotations omitted).   Moreover, "[t]he

exhaustion doctrine is principally designed to protect the state courts' role in the

enforcement of federal law and prevent disruption of state judicial proceedings."   *Rose*,

455 U.S. at 518, 102 S.Ct. at 1203 (internal citations omitted).  This upholds the doctrine

of comity which "teaches that one court should defer action on causes properly within its

jurisdiction until the courts of another sovereignty with concurrent powers, and already

cognizant of the litigation, have had an opportunity to pass upon the matter."   *Id.* (quoting

*Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long

as the applicant "has the right under the law of the State to raise, by any available

procedure the question presented."   28 U.S.C. § 2254(c).   "[O]nce the federal claim has

been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).   The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).   Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.   "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz.

2007); *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998).   Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989).

### C.  Procedural Default

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 650 (1991).  Moreover, federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Id.*, 501 U.S. at 728, 111 S.Ct. at 2254.  This is true whether the state law basis is substantive or procedural.  *Id.* (citations omitted).  Such claims are considered procedurally barred from review.  *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law.   In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted).  Thus, in some circumstances, a petitioner's failure to

exhaust a federal claim in state court may *cause* a procedural default. *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005). Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where the petitioner presented his claims to the state court, which denied relief based on independent and adequate state grounds. *Coleman*, 501 U.S. at 728, 111 S.Ct. at 2254. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted). Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)) (emphasis in original).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068,

- 18 -

103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). In addition to cause, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102

S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982)).  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'"  *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862.  Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3).  "if an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim."  *Id.*, 2002 cmt.  Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver.  *See id.*; *see also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002).  The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations."  *Cassett*, 406 F.3d at 622.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation.  *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).    The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.   28 U.S.C. § 2244(d)(1).   Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of Pryor's petition.    The Court has independently reviewed the record and finds that the First Amended Petition (Doc. 11) is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

# IV.   ANALYSIS

## A.   *Ground One:  Defendant's Move to Mexico and Flight Instruction*

Petitioner asserts that the trial court erred by denying his motion *in limine* "to preclude evidence of Petitioner's arrest in Mexico and [by] giving a flight instruction unsupported by the facts[,] [thereby] creating prejudice outweighing any probative value to the State, [and] denying the defendant a fair trial[.]"  First Amended Petition (Doc. 11) at 6.  Petitioner argues that this error resulted in a violation of his constitutional rights to due process and a fair trial.  *Id.*   Respondents assert that "Petitioner did not 'fairly present' this claim to the state courts."  Answer (Doc. 17) at 9.  Respondents point out that Petitioner's pretrial motion argued "the evidence was irrelevant and unduly prejudicial, and thus inadmissible pursuant to the Arizona Rules of Evidence[,] . . . [and] Petitioner did not object at trial to the trial court's giving the jury a flight instruction." *Id.*; *see also* Answer (Doc. 17), Appellant's Opening Br. (Exh. "D") at 26–30; Trial Tr. 9/9/2008 (Doc. 18-2) 95:23–102:17;  Trial Tr. 9/12/2008 (Doc. 18-7) 13:20–21:7. Additionally, Respondents argue that Petitioner made only a passing reference to an alleged violation of his fair trial right in his reply brief to the Arizona Court of Appeals, and as such the argument was waived.  Answer (Doc. 17) at 9 (citing *State v. Ruggiero*, 211 Ariz. 262, 267 n. 2, 120 P.3d 690, 695 (Ct. App. 2005)).

The Court agrees with Respondents and finds that Petitioner did not "fairly present" these claims to the Arizona state courts.  *See Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not

indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).   "Fair presentation" requires alerting "each appropriate state court" to the presence of a federal claim, which Petitioner failed to do.   *Baldwin*, 541 U.S. at 29, 124 S.Ct. at 1349.   As such, the claim is unexhausted, and would now be precluded.   Ariz. R. Crim. P. 32.2(a)(3).   Therefore, Petitioner's claim is procedurally defaulted.   *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").   Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.   *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).   Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations

omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").   As such, Petitioner's habeas claim must fail.

### B.       Ground Two:  Motion for Judgment of Acquittal

Petitioner alleges that the trial court erred in denying his motion for a judgment of acquittal based upon the State's alleged failure "to prove all the necessary elements required to find the defendant guilty of continuous sexual abuse in counts one and two." First Amended Petition (Doc. 11) at 7.  Petitioner argues that this error resulted in a violation of his Due Process rights under the United States Constitution.    *Id.* Respondents assert that "Petitioner did not 'fairly present' this claim to the state courts[,] [because] Petitioner's motion at trial was based on Arizona's Rule 20."   Answer (Doc. 17) at 11.

The Court agrees with Respondents and finds that Petitioner did not "fairly present" these claims to the Arizona state courts.  *See Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).  As such, the claim is unexhausted,

and would now be precluded.  Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court"). Therefore, Petitioner's claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").  Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  As such, Petitioner's claim is denied.

C.      *Ground Three: Admission of Hearsay*

Petitioner alleges that admitting hearsay testimony of Michelle Wright violated his rights pursuant to the Confrontation Clause of the 6th Amendment.   First Amended Petition (Doc. 11) at 8.   Respondents assert that "Petitioner did not 'fairly present' this claim to the state courts[,] [because] Petitioner objected to this testimony at trial on the ground it was hearsay . . . citing the Arizona Rules of Evidence."   Answer (Doc. 17) at 11–12.   Respondents further note that in his opening appellate brief and in reply, Petitioner only made passing reference to a denial of a "fair trial."  *Id.* at 12.

The Court agrees with Respondents and finds that Petitioner did not "fairly present" these claims to the Arizona state courts.  *See Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).  Merely labeling a claim "federal" or making a passing reference to the United States Constitution does not constitute "fair presentment."  *See Baldwin v. Reese*, 541 U.S. at 33, 124 S.Ct. at 1351; *see also Duncan v. Henry*, 513 U.S. 364, 365–66 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under

the United States Constitution").  As such, the claim is unexhausted, and would now be

precluded.  Ariz. R. Crim. P. 32.2(a)(3); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124

S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (in order to "fairly present" one's claims, the

prisoner must do so "in each appropriate state court").  Therefore, Petitioner's claim is

procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546,

2557 n. 1, 115 L.Ed.2d 640 (1991) ("petitioner failed to exhaust state remedies and the

court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred").  Where a

habeas petitioner's claims have been procedurally defaulted, the federal courts are

prohibited from subsequent review unless the petitioner can show cause and actual

prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103

L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding

barred federal habeas review unless petitioner demonstrated cause and prejudice).

Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v.

Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (Petitioner

"must show not merely that the errors . . . created a *possibility* of prejudice, but that they

worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also

Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer

any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on

which to address the merits of his claims.").  Therefore, Petitioner's claim is denied.

 . . .

**D.      Grounds Four and Five:  Ineffective Assistance of Counsel**

For cases which have been fairly presented to the State court, the Supreme Court elucidated a two part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction.  *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, Petitioner must show that counsel's performance was deficient.  *Id.* at 687, 104 S.Ct. at 2064.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  Second, Petitioner must show that this performance prejudiced his defense.  *Id.*  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable."  *Id.*  Ultimately, whether or not counsel's performance was effective hinges on its reasonableness under prevailing professional norms.  *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *see also State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims).  The Sixth Amendment's guarantee of effective assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial.  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  "Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct *so undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (quoting *Strickland*, 466 at 686) (emphasis and alteration in original).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' .

. . . and when the two apply in tandem, review is 'doubly' so[.]"  *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (citations omitted). Judging counsel's performance must be made without the influence of hindsight.  *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).  Without the requisite showing of either "deficient performance" or "sufficient prejudice," Petitioner cannot prevail on his ineffectiveness claim.  *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071.  "[T]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Gentry v. Sinclair*, 705 F.3d 884, 899 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788) (alterations in original).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'"  *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).  In the instant case, the Rule 32 court properly stated the *Strickland* rule, and this ruling was adopted by the Arizona Court of Appeals.  In Chambers Ruling, Re: Pet. for PCR 8/4/2010 (Doc. 1-4) at 4; Ariz. Ct. App. Mem. Decision 2/8/2011 (Doc. 1-4) at 36; *see also* Answer (Doc. 11), Exh. "E."  Accordingly, this Court must determine whether the State courts' conclusions were an unreasonable application thereof.  28 U.S.C. § 2254(d).

. . .

**1.  Ground Four: Failure to make a *Batson* challenge**

Petitioner claims that his trial counsel was ineffective "by failing to challenge the prosecutor's use of peremptory strikes against jurors, based on gender . . . in violation of the 6th Amendment . . . and 14th Amendment . . . of the United States Constitution[.]" Petition (Doc. 11) at 9.  Petitioner asserts that "[t]he [court of appeal's] decision erred by requiring the Defendant to prove all three prongs of *Batson* without the benefit of an evidentiary hearing."  *Id.* at 9A.

**a.  State Court Decisions**

The Rule 32 court stated that "[t]o state a colorable claim for ineffective assistance of counsel, a petitioner must satisfy a two-part test: (1) a petitioner must show that his or her counsel's performance fell below an objective standard of reasonableness; and, (2) a petitioner must show that the deficient performance resulted in actual prejudice to his case."  Answer (Doc. 17), In Chambers Ruling: Petition for Post-Conviction Relief 11/3/2010 (Exh. "O") at 1–2 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The court found that Petitioner "failed to allege facts sufficient to establish that his case was in fact prejudiced."  Answer (Doc. 17), Exh. "O" at 2.  The Rule 32 court noted that:

> [O]f the fifty-four jurors questioned in voir dire, only nineteen were men. Of these, eleven were struck for cause.  Given the composition of this jury pool, it is extremely likely that the empaneled jury would consist of more women than men.  Indeed, the final jury included only three men, one of whom was the foreperson.

*Id.*, Exh. "O" at 2.  The Rule 32 court went on to indicate that the prosecutor used one of her strikes to remove a woman.  The court also found that a previous *Batson* challenge made against the same prosecutor failed, because the strikes were gender-neutral.  *Id.*,

Exh. "O" at 2.  Based on these facts, the Rule 32 court denied post-conviction relief finding that "Petitioner ha[d] failed to state a colorable claim of ineffective assistance of counsel[.]"  *Id.*, Exh. "O" at 2.

The Arizona Court of Appeals granted review, but denied relief.  *See* Answer (Doc. 17), Ariz. Ct. App. Mem. Decision 4/7/2011 (Exh. "R").  The appellate court recognized that "[e]ven assuming, without deciding that Pryor ha[d] demonstrated his counsel should have raised a *Batson* challenge, that alone is not sufficient to show prejudice.  He also must show a reasonable probability a *Batson* challenge would have resulted in a different jury."  *Id.*, Exh. "R" at 3 (citing *Strickland*, 466 U.S. at 694; *Batson*, 476 U.S. at 99 n. 24 & 100).  Relying on the same facts as those found by the Rule 32 court, the court of appeals found that the lower court did not abuse its discretion in finding that Petitioner had failed to demonstrate a colorable claim of prejudice.

### b. *Batson* Challenge

"Because we are evaluating the likelihood of success of [Petitioner's] hypothetical [*Batson*] objection in the context of an ineffective assistance claim, he has the burden to show under *Strickland* a reasonable probability he would have prevailed on a [*Batson*] claim."  *Carrera v. Ayers*, 699 F.3d 1104, 1108 (9th Cir. 2012) (assessing prisoner's habeas claim for ineffective assistance of counsel for an alleged failure to make a *Wheeler* objection – the California equivalent of a *Batson* challenge).  *Batson* requires that (1) a defendant must "make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose[;]" (2) once the defendant establishes a prima facie case, "the burden shifts to the

State to explain adequately the racial exclusion . . . [by] demonstrat[ing] that 'permissible racially neutral selection criteria and procedures have produced the monochromatic result[;]'" and (3) "the trial court must undertake a 'factual inquiry' that 'takes into account all possible explanatory factors' to determine if the defendant proved purposeful racial discrimination. *Batson v. Kentucky*, 476 U.S. 79, 93–95, 106 S.Ct. 1712, 1721–22, 90 L.Ed.2d 69 (1986) (citations omitted). This analysis also applies to challenges of peremptory strikes based upon gender. *See J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (extending *Batson* to intentional discrimination on the basis of gender).

In the instant case, nineteen (19) out of fifty-four (54) jurors were men. *See* Answer (Doc. 17), Case Info. Sheet – Panel Jury 9/9/2008 (Exh. "GG"). Of these, eleven (11) men and seventeen (17) women were struck for cause. *See id.* As such, the initial panel was comprised of eighteen (18) women and eight (8) men.[2] *See id.* The trial court judge presided over *voir dire*, asking the majority of the questions. Trial Tr. 9/9/2008 (Doc. 18-2) 6:6–83:19. The prosecutor, Ms. Araneta, asked three questions of the entire panel, as follows: (1) "[I]f you heard testimony from a child, are there any of you that would not believe that testimony simply because they are a child?" (2) "[I]s there anybody that would require eyewitness testimony to the acts that are alleged before they could convict?" and (3) [I]s there anyone that for whatever reason feels that they could not sit in judgment of another human being?" *Id.* at 64:4–25. None of the jury panel answered "yes" to the prosecutor's questions. *Id.* Of the individuals that the prosecutor

---

[2] Accordingly, of the twenty-six (26) individuals on the venire, 30.7% were men.

struck with peremptory challenges, one woman indicated that she had previously sat on several juries, two of which the defendant was found guilty of a lesser included charge; one male stated that his "wife's occupation is to take care of me[;]" three men were engineers; and one male was brought in at the very end of *voir dire* to replace a panel member who the court excused due to scheduling conflicts.  *Id.* at 70:18–24, 71:16–72:12, 73:25–74:6, 75:6–10, 78:13–81:15.   The final panel, not including the two alternates, consisted of nine (9) women and three (3) men.[3]  In the state courts, Petitioner also introduced evidence that the same prosecutor had been challenged pursuant to *Batson* in another case, ostensibly to show a pattern of discriminatory conduct.  *See* Answer (Doc. 17), Exh. "O," Ariz. Superior Ct. ME 7/25/2006 (Exh. "HH"); *Batson*, 476 U.S. at 95–96, 106 S.Ct. at 1722 (citations omitted) ("a consistent pattern of official racial discrimination is not a necessary predicate to a violation of the Equal Protection Clause").  This prior challenge failed, however.  *See* Answer (Doc. 17), Exh. "O."

Based upon the totality of the circumstances, the Court finds that Petitioner is unable to establish a *prima facie* case under *Batson*.  The majority of the venire consisted of women, and the percentage of men represented in venire and the final panel was similar.  Furthermore, it is not uncommon for prosecutors to strike engineers from the panel, as three of the men struck were.  Marvin Zalman & Olga Tsoudis, *Plucking Weeds from the Garden: Lawyers Speak About Voir Dire*, 51 Wayne L. Rev. 163, 313–315, 352 (attorneys interviewed discuss striking engineers and other technically minded prospective jurors because of how they view reasonable doubt).  One man appears to be a

---

[3] As such, the jury was 25% male.

1  chauvinist, which one might surmise would be undesirable in a juror of a sexual abuse

2  case.  Trial Tr. 9/9/2008 (Doc. 18-2) 71:16–22.  Additionally, the last male was brought

3
4  in at the very end of *voir dire* and was young, single, and without children, whereas the

5  other panel members chosen for the jury were older, married/divorced, and/or had

6  children.  *Id.* at 69:10–83:5; *see also* Answer (Doc. 17), Exh. "GG."

7
8           **c.  *Strickland* Error**

9           Based on the foregoing, this Court finds that the Arizona courts did not

10 unreasonably apply clearly established Federal law or unreasonably determine the facts in

11 light of the evidence presented.  Therefore, Petitioner cannot meet his burden to show

12 prejudice.   *See Gulbrandson*, 738 F.3d at 991.   Based upon the totality of the

13 circumstances, Petitioner cannot establish a *prima facie* case under *Batson*, and as such

14
15 his ineffective assistance of counsel claim regarding counsel's alleged failure to

16 challenge the prosecutor's peremptory strikes must fail.  *See Strickland*, 466 U.S. at 687,

17
18 104 S.Ct. at 2064.

19           **2.  Ground Five:  Failure to challenge competency**

20
21           Petitioner claims that his appellate and first Rule 32 counsel were ineffective for

22 failing "to challenge defendant's conviction based on defendant's competency, due to

23 sleep deprivation[,]" because Petitioner did not have his continuous positive airway

24
25 pressure ("CPAP") machine while incarcerated in the Pima County Jail, and therefore

26 could not "knowingly and voluntarily" reject the State's plea offer and was not competent

27 to stand trial.  First Amended Petition (Doc. 11) at 10–10B.

28
   . . .

### a.  Appellate Counsel

In his second PCR petition, Petitioner argued that "[b]oth Appellate [c]ounsel and Post-Conviction counsel were ineffective for failing to previously present th[e] issue [of Petitioner's competency] to the [c]ourt for consideration.   Answer (Doc. 17), Def.'s (Subsequent) Petition for PCR 10/27/2011 (Exh. "X") at 5.  Regarding Petitioner's claim for allegedly ineffective assistance of appellate counsel, the Rule 32 court found that "Petitioner's argument . . . [did] not fall under any of the exceptions listed in Rule 32.2(b)[, Arizona Rules of Criminal Procedure,] . . . [and] Petitioner could have argued that he received ineffective assistance of appellate counsel in his first Petition for Post Conviction Relief."  Answer (Doc. 17), In Chambers Ruling, Re: Pet. for PCR 5/17/2012 (Exh. "AA") at 3.   As such, the Rule 32 court deemed Petitioner's claim regarding ineffective assistance of appellate counsel waived, and precluded from review.  *Id.*, Exh. "AA" at 3.   Petitioner again argued ineffective assistance of appellate counsel in his Motion for Rehearing.  *See* Answer (Doc. 17), Exh. "BB."  Petitioner did not appeal the Rule 32 court's finding that his ineffective assistance of appellate counsel claim was precluded from review.  *See* Answer (Doc. 17) Petition for Review 6/27/2012 (Exh. "DD"), Ariz. Ct. App. Mem. Decision 10/12/2012 (Exh. "EE") at 3 n. 1.

As such, Petitioner failed to "fairly present" this claim "in each appropriate state court." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004). Moreover, the state court's determination that this claim was waived based upon state procedural grounds, means that it is procedurally barred from federal habeas review.  *See* *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  Accordingly,

Petitioner's habeas claim regarding ineffective assistant of appellate counsel must be denied.

### b.  PCR Counsel

As noted in Section IV.D.2.a, *supra*, Petitioner asserted that his Post-Conviction counsel was ineffective for failing to raise claims related to competency due to sleep deprivation in his Second PCR Petition.  Answer (Doc. 17), Exh. "X" at 5.  More specifically, Petitioner alleges that his Rule 32 counsel was ineffective for failing to challenge the effectiveness of his appellate counsel.  *See id.*, Exh. "X" at 3–5.

The Rule 32 court held that "ineffective assistance of Post Conviction Relief counsel is not a valid claim for defendants who were convicted at trial."  Answer (Doc. 17), In Chambers Ruling Re: Petition for Post-Conviction Relief 5/16/2012 (Exh. "AA") at 3 (citing *State v. Krum*, 183 Ariz. 288, 291–92 (1995)).

In his *pro se* Petition for Review, Petitioner relied on *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to argue that the trial court erred (1) by holding that the "Petitioner was not entitled to effective assistance of counsel in his first Rule 32 Petition[;]" and (2) "by failing to address the issues of competency when it relied on State case law for 'preclusion[.]'"  Answer (Doc. 17), Pet. For Review (Exh. "DD") at 4.  Petitioner further asserted that "under new federal law, Arizona defendants, who go to trial, are now constitutionally guaranteed the 6th Amendment right to effective counsel in a collateral proceeding, attacking the ineffectiveness of all previous counsel."  *Id.*, Exh. "DD" at 5.

The court of appeals corrected Petitioner's misapprehension of the Supreme Court of the United States' decision in *Martinez*, recognizing that "the Court did not ground its

decision in a constitutional right, instead determining that defendants had an 'equitable' right to the effective assistance of initial post-conviction counsel and limited [this] decision to the application of procedural default in federal habeas review."  Answer (Doc. 17) Ariz. Ct. App. Mem. Decision 10/12/2012 (Exh. "EE") at 3 (citing *Martinez v. Ryan*, — U.S. —, 132 S.Ct. at 1319–20).  The court of appeals held that nothing in *Martinez* altered Arizona law that "a claim that Rule 32 counsel was ineffective is not a cognizable ground for relief in a subsequent Rule 32 proceeding" and denied relief.  *Id.*, Exh. "EE" at 3–4.

The Supreme Court of the United States has held that "a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review[.]" *Coleman v. Thompson*, 501 U.S. 722, 756, 111 S.Ct. 2546, 2568, 115 L.Ed.2d 640 (1991).  As such, the Arizona Court of Appeals correctly found Petitioner's reliance on *Martinez v. Ryan*, – U.S. –, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) misplaced.  The Ninth Circuit Court of Appeals has also observed that "*Martinez* did not create a constitutional right to effective assistance of counsel in PCR proceedings."  *Dickens v. Ryan*, 688 F.3d 1054 (9th Cir. 2012).  "Thus, the claim of ineffective assistance of PCR counsel used to establish cause in the narrow circumstances outlined in *Martinez* is an equitable claim and not a constitutional claim[.]" *Id.*  As such, any attempt by Petitioner to assert an ineffective assistance of counsel claim regarding his PCR counsel must fail.

**V.    CONCLUSION**

For the reasons delineated above, IT IS HEREBY ORDERED that:

1)  Petitioner's First Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 11) is DENIED;

2)  A certificate of appealability is DENIED, because reasonable jurists would not find the Court's ruling debatable.  *See* 28 U.S.C. § 2253;

3)  This matter is DISMISSED with prejudice; and

4)  The Clerk of the Court shall enter judgment and close its file in this matter.

Dated this 28th day of September, 2015.

_____
Honorable Bruce G. Macdonald
United States Magistrate Judge